UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE
COMPANY, et al.,

        Plaintiffs,

v.

SPINE SPECIALISTS OF
MICHIGAN, P.C., et al.,

        Defendants.
_____/

Case Number: 24-cv-11881
Hon. Linda V. Parker

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO FILE AMENDED COMPLAINT (ECF No. 49)

This matter is before the Court on Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, and ASMI Auto Insurance Company's (collectively, "Allstate") motion for leave to file an amended complaint.  (ECF No. 49.)  The motion is fully briefed.  (ECF Nos. 56-57, 61-62.)  For the reasons set forth below, the motion is **GRANTED**.

I.     BACKGROUND

Allstate seeks to file an amended complaint to add two additional defendants: Central Home Health Care Services, Inc. ("CHHCS") and Sheel

Walvekar ("Walvekar").  Walvekar allegedly controlled CHHCS for the purpose of billing for services allegedly rendered to patients who claimed to be involved in auto accidents by existing defendant Central Home Health Care, Inc. ("CHHC"). (ECF No. 49, PageID.1774.)  Allstate alleges that discovery in this case has established that while health care services were ordered from CHHC and rendered by CHHC employees and contractors, it was CHHCS that billed Allstate for many of those services as if they were actually ordered from and provided by CHHCS. (ECF No. 49, PageID.1776-77.)

For example, on June 9, 2023, Defendant Dr. Louis Radden, D.O. allegedly prescribed healthcare services from CHHC for patient D.D.  (ECF No. 49-2, PageID.1806-07.)  However, CHHCS, not CHHC, billed for the alleged services to D.D., charging Allstate more than $13,700 for two purported dates of service.  (*Id*.) Allstate notes that in addition to this specific example, the First Amended Complaint will include exhibits that identify by date, service, and amount billed every fraudulent claim submitted.  (ECF No. 61, PageID.2092.)

Allstate detailed numerous ways that CHHC allegedly obscured the role of CHHCS and its relationship to CHHC, including multiple instances where Walvekar testified in cases filed under the name "Central Home Health Care Services" that the plaintiff in those cases was formed in the 1980s and had multiple owners, both of which describe CHHC and not CHHCS.  (ECF No. 61,

2

PageID.2088.)  In fact, CHHCS was incorporated in Michigan in 2012 with Walvekar as the sole owner.  (ECF No. 49-9; ECF No. 56, PageID.2005.)

Further, Allstate alleges that CHHC and CHHCS routinely conflate their operations, and the two entities frequently bill interchangeably and without regard to what entity actually provides services.  (ECF No. 49-2, PageID.1807.)  Allstate provides two examples to support this allegation.  First, despite the fact that services were ordered from CHHC, two invoices were submitted to Allstate using CHHCS' name, but just one of those invoices used the Taxpayer Identification Number ("TIN") of CHHCS while the other invoice used a TIN belonging to CHHC.  (ECF No. 49-2, PageID.1808; ECF No. 49-6.)  Similarly, in the second example, the defendants submitted an invoice to Allstate that included the TIN for CHHC but provided other documentation with the name and TIN of CHHCS.  (ECF No. 49-2, PageID.1808.)

Beyond connecting CHHCS and Walvekar to the alleged scheme, the First Amended Complaint outlines the ways in which they allegedly contributed to it.  These contributions include billing for health care services not performed (ECF No. 49-2, ¶¶ 165-79), creating false diagnoses and reports of physical limitations (*Id.* at ¶¶ 251-61), providing medically unnecessary health care treatment (*Id.* at ¶¶ 352-91), submitting fraudulent double billing (*Id.* at ¶¶ 475-76), and charging unreasonable and uncustomary rates for services.  (*Id.* at ¶¶ 493-95, 504-508).

3

In all of these allegations, Allstate provides, where applicable, the patient's initials, claim number, dates of treatment, amount billed, and services allegedly rendered.  As a result of the defendants' allegedly fraudulent acts, Allstate has paid millions of dollars to them related to the patients at issue in the First Amended Complaint.  (ECF No. 49-2, PageID.1796.)  As further evidence of these payments, specifically those made to CHHCS, Allstate provides copies of cancelled checks produced during discovery, which alone total to over $125,000.  (ECF No. 61-4.)

Defendants Spine Specialists of Michigan, P.C. ("Spine Specialists"), Michigan Ambulatory Surgical Center, LLC ("MASC"), Anesthesia Services Affiliates, PLLC ("ASA"), North American Laboratories, LLC ("NAL"), and Dr. Louis Radden, D.O. ("Dr. Radden") (together the "Spine Defendants"), oppose the motion on the grounds that they will be forced to incur additional attorney's fees if the relief sought by Allstate is granted.  However, Spine Defendants acknowledge that there are no new claims asserted and the new factual assertions are limited. (ECF No. 57, PageID.2070-2071.)

CHHC filed a separate response objecting to the motion.  (ECF No. 56.) CHHC argues that the amendment would be futile as the amended complaint would not survive a motion to dismiss as it does not satisfy the particularity requirements of Fed. R. Civ. P. 9(b).  (*Id*. at PageID.2010-12.)  Furthermore,

4

CHHC argues that the lack of new information in the amended complaint demonstrates undue delay or bad faith. (*Id.* at PageID.2013.)

Originally filed on July 19, 2024, this case has been pending for approximately one year. (ECF No. 1.) Discovery is currently scheduled to close on September 30, 2025, and a dispositive motion deadline is set for December 16, 2025. This case was recently reassigned to this Court and was originally before Judge Goldsmith. No defendant has filed a motion to dismiss as of the date of this Opinion and Order.

## II. STANDARD

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend is "freely" granted "when justice so requires." *See* Fed. R. Civ. P. 15(a). The United States Supreme Court has advised that a plaintiff should be allowed the opportunity to test a claim on the merits if the facts and circumstances underlying the claim suggest that it may be a proper subject of relief. *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, a motion for leave to amend a complaint should be denied if the amendment is brought in bad faith or for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile. *Id.*

An amendment is futile when the proposed amendment fails to state a claim upon which relief can be granted and would be subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). *Rose v. Hartford Underwriters Ins. Co.*,

5

203 F.3d 417, 420 (6th Cir. 2000); *see also Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (explaining that a proposed amendment is futile if the amendment could not withstand a motion to dismiss).

### III. ANALYSIS

#### A. Good Cause Under Federal Rule of Civil Procedure 16(b)(4)

Although neither party acknowledges this fact, the deadline to seek leave to amend or join parties set by the scheduling order in this case expired in December of 2024. (*See* ECF No. 30, PageID.649.) Consequently, Allstate must demonstrate good cause to modify the scheduling order under Federal Rule of Civil Procedure 16(b)(4) before leave to amend will be granted. *See Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quotation omitted). "Another important consideration . . . is whether the opposing party will suffer prejudice by virtue of the amendment." *Leary*, 349 F.3d at 906 (citing *Inge*, 281 F.3d at 625).

Although as Allstate mentions, the parties' relevant discovery plan contemplated that motions for leave to amend would be filed ninety days before the close of fact discovery, the scheduling order in this case states that "[u]nless a different date is specified on page 1, parties may not be added or pleadings

6

amended more than 14 days after issuance of this Order, absent a showing of good cause." (ECF No. 30, PageID.649.)  No date for amendment is listed on the first page of the scheduling order.  (*Id.* at PageID.646-647.)  Consequently, the deadline to seek leave to amend expired fourteen days after the issuance of the scheduling order.

### a. Diligence

While neither party addresses Allstate's diligence in relation to modifying the scheduling order, Allstate asserts that it was "diligent in its efforts to develop the information and evidence that led to this motion." (ECF No. 49, PageID.1777.)  Immediately following the parties' filing of their Discovery Plan on November 15, 2024, Allstate served written discovery on each of the defendants, but "did not receive supplemental responses from CHHC or many of the documents that led to the filing of this motion, such as tax returns from CHHCS and W-9 forms for both CHHC and CHHCS, until February 14, 2025[]"—nearly two months after the motion deadline set by the scheduling order.  (*Id*. at 1778; ECF No. 30.)

As the motion deadline had already passed upon Allstate's receipt of the relevant discovery documents, it was impossible for Allstate to comply with the timeline set forth in the scheduling order.  Accordingly, the Court finds that in filing its motion to amend within just one month of receiving the defendants' discovery response, Allstate was diligent in its attempt to meet the scheduling

7

order's requirements. *See Leary*, 349 F.3d at 907 (stating that "modification is permitted under Rule 16 if Plaintiffs can demonstrate . . . that despite their diligence[,] they could not meet the original deadline."); *C.S. v. McCrumb*, 135 F.4th 1056, 1069 (6th Cir. 2025) ("While Defendants could have exercised greater diligence in interpreting the rules, we do not find that they acted in bad faith, and the balance of factors tilts in their favor.").

### b. Prejudice

In its response to Allstate's motion, CHHC puts forth no arguments that it already has or will be prejudiced as a result of the motion being granted. Thus, as to CHHC, the Court does not find prejudice to be a sufficient reason to deny Allstate's amendment. *See McCrumb*, 135 F.4th at 1069 (noting that plaintiff being unable to show any prejudice that resulted from defendants' delay in submitting their motion for summary judgment "weighs against rejecting Defendants' motion on that basis.").

Spine Defendants, on the other hand, argue that they will be prejudiced as the information cited by Allstate is not new and they will be forced to incur additional attorney's fees to answer the First Amended Complaint. However, Spine Defendants acknowledge that only a few of the proposed new allegations involve them. (ECF No. 57, PageID.2070.)

8

First, the Court views Allstate's allegations as true for the purposes of the instant motion. Under this standard, it is irrelevant if the allegations are "demonstrably false." (ECF No. 57, PageID.2071.)

Furthermore, the Court finds that any additional attorney's fees to Spine Defendants because of answering the First Amended Complaint would be de minimis given the limited nature of the amendment. *See Powell v. Wal-Mart Stores, Inc.*, No. 16-10643, 2017 WL 2930918, at *2 (E.D. Mich. July 10, 2017) (granting plaintiff's untimely motion to amend, despite the additional costs and burdens that will be imposed on defendant); *Cf. E.E.O.C. v. Gap, Inc.*, No. 10-14559, 2011 WL 6780657, at *3 (E.D. Mich. Dec. 27, 2011) (denying plaintiff's motion to amend when the proposed changes were so substantial that answering the First Amended Complaint would "require not only new and additional discovery, but [would] fundamentally change the defense theory and strategy.")

The Court notes that Spine Defendants have not claimed that the First Amended Complaint will require an entirely new defense theory or strategy. Rather, their primary concern is prejudice resulting from delay caused by Walvekar or CHHCS moving for dismissal under Fed. R. Civ. P. 12(b)(6), or otherwise engaging in motion practice. (ECF No. 57, PageID.2074.)

The Court does not find Walvekar's and CHHCS' ability to engage in motion practice as new parties to the lawsuit a sufficient reason to deny Allstate's

9

request to amend. Such a finding would effectively prevent amendments in every case as all new parties are permitted to engage in motion practice. Further, the Court sees no reason why discovery would be stayed in the event of a motion to dismiss the First Amended Complaint, thereby preventing the new defendants' motion practice from delaying the current case schedule.

*Durfee v. Rich*, No. 02-10041, 2008 WL 324206, at *3 (E.D. Mich. Feb. 4, 2008) is distinguishable as it involved a proposed amendment made after the close of discovery, and the *Durfee* court explicitly noted that the "Sixth Circuit has repeatedly concluded that allowing amendment after the close of discovery prejudices the defendant[.]" Furthermore, the issues raised by the proposed amendment largely overlap with those previously raised. Consequently, the Court is unpersuaded that the time remaining in the discovery period is insufficient to address these issues.

*Perez v. FCA USA LLC*, No. 19-CV-13510, 2021 WL 1608754 (E.D. Mich. Apr. 26, 2021) is also distinguishable for two reasons: first, the case had already progressed to the summary judgment stage when plaintiffs sought leave to amend. Second, that leave was not sought until at least three months following the close of discovery, as opposed to the present case in which Allstate sought leave approximately six months before the close of discovery. Moreover, in deeming plaintiffs' proposed amendment "improper," the *Perez* court cited *West v. Ann*

10

*Arbor Hous. Comm'n*, No. 17-CV-10566, 2018 WL 654839, at *1 (E.D. Mich. Feb. 1, 2018). *West* too is distinguishable as the plaintiff sought leave to file a second amendment only to add "more factual detail" to an already lengthy complaint, whereas the instant motion is Allstate's first request to amend, and it seeks a more substantial amendment in the form of naming additional parties. *Id.* Given Allstate's timely filing and notable additions to its complaint, the Court does not find the proposed amendment to be "improper."

Additionally, Allstate alleges—and neither CHHC nor Spine Defendants refute—that "the defendants [had] not conducted any depositions or served any discovery on any third party" at the time the instant motion was filed, thereby preventing the need for "any duplication of effort by any of the defendants." (ECF No. 49, PageID.1787.) As the defendants were put on notice of potential additional parties prior to beginning their discovery efforts, and well before the contemplated deadline to seek leave to amend the complaint, the Court finds no prejudice to any of the defendants. *Cf. Shane v. Bunzl Distribution USA, Inc.*, 275 F. App'x 535 (6th Cir. 2008) (finding that allowing an amended complaint past the deadline set forth in the scheduling order "would have prejudiced [defendant] because it would have required still further discovery" after the discovery deadline). For these reasons, the Court finds that Allstate has demonstrated good cause for leave to

amend the scheduling order and proceeds with the analysis under Federal Rule of Civil Procedure 15(a).

### B. Alleged Futility of Amendment

Defendants argue that leave to amend should be denied as the proposed amendment would not survive a motion to dismiss. The Court disagrees. CHHC raises two specific grounds in support of their futility argument: (1) the proposed amended complaint is deficient under Federal Rule of Civil Procedure 9(b), as it fails to specify any concrete injury resulting from the fraud; and (2) the voluntary payment doctrine bars recovery. In general, CHHC argues that Allstate has not alleged sufficient factual detail for its proposed amended complaint to overcome a motion to dismiss.

Allstate has raised claims relating to: (1) violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(c) and (d); (2) common law fraud; (3) civil conspiracy; (4) payment under mistake of fact; and (5) unjust enrichment. Allstate also seeks declaratory relief that no previously denied and pending claims submitted to it by the Defendants are compensable.

### i. Deficiency Under Rule 9(b)

Where a plaintiff is "alleging fraud or mistake," Fed. R. Civ. P. 9(b) sets a heightened pleading standard, requiring the plaintiff to "state with particularity the circumstances constituting fraud or mistake." To meet this particularity

12

requirement, the plaintiff must: (1) specify the fraudulent statements, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain their fraudulent nature. *New London Tobacco Market, Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393, 411 (6th Cir. 2022). Essentially, the plaintiff must state the "who, what, when, where, and how" of the alleged fraud. *Id*. at 411 (citations omitted).

CHHC, relying on *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993), argues Allstate's proposed amended complaint is deficient under Rule 9(b), as it fails to specify any concrete "injury resulting from the fraud." (ECF No. 56, PageID.2012.) Specifically, CHHC alleges that Allstate "has not yet identified even one payment made to CHHC or CHHCS that was fraudulently induced, nor has it detailed any particular instance of detrimental reliance." (*Id*.)

However, Fed. R. Civ. P. 9(b) and the cases cited make no mention of damages. And even if the heightened pleading standard applies to damages in particular, the First Amended Complaint would meet it. Allstate explicitly provides the amount billed corresponding to each allegedly fraudulent claim submitted by CHHCS and Walvekar, and "has produced in discovery hundreds of checks showing payments that it was induced to make as a result of the defendants' [allegedly] fraudulent conduct." (ECF No. 61, PageID.2092 n.4.)

Moreover, the examples of CHHCS' and Walvekar's alleged fraud in the amended complaint meet the particularity requirements set out by the Sixth Circuit.

13

Take the example detailed above in which CHHCS charged Allstate $13,700 for healthcare services allegedly provided to patient D.D., despite Dr. Radden prescribing those services from CHHC, not CHHCS. (ECF No. 49-2, PageID.1806-07.) This example is characteristic of the entire amended complaint and contains the four elements necessary to plead fraud with particularity: (1) Allstate specifies the fraudulent statements by including the claim number and alleged services provided of the claim at issue; (2) identifies Dr. Radden as the prescriber and CHHCS as the entity who submitted the allegedly fraudulent claim; (3) states where and when the statements were made, including the exact date on which Dr. Radden prescribed the services; and (4) explains the fraudulent nature of the claim, alleging that such instances of incorrect billing were intentionally submitted to mislead auto insurers. (*Id.*); *New London Tobacco Market, Inc.*, 44 F.4th at 411.

As Allstate has plead the "who, what, when, where, and how" of the alleged fraud, the Court finds that the First Amended Complaint satisfies the heightened pleading requirement under Rule 9(b). *See Allstate Ins. Co. v. Inscribed PLLC*, No. 19-CV-13721, 2020 WL 5801186, at *6 (E.D. Mich. Sept. 29, 2020) (finding factual allegations similar to those in the First Amended Complaint sufficient to survive a motion to dismiss and to place "each defendant on notice of their role in

the alleged scheme, including the specific misrepresentations they are alleged to have made.").

The Court notes that this holding is consistent with several prior rulings issued in similar cases regarding allegedly fraudulent claims submitted to auto insurers. *See, e.g.*, *Allstate Ins. Co. v. Utica Physical Therapy, Inc.*, No. 17-CV-13823, 2018 WL 3037885, at *5 (E.D. Mich. June 19, 2018) ("As numerous other courts in this district have concluded in numerous similar cases, 'such documentation and explanation of the fraudulent scheme satisfies Rule 9(b) because it sufficiently puts the defendants on notice of the claims against which they will have to defend.'") (quoting *Allstate Ins. Co. v. Total Toxicology Labs, LLC*, No. 16-12220, 2017 WL 3616476, at *6 (E.D. Mich. Aug. 23, 2017)).

CHHC also argues that the First Amended Complaint fails under Rule 9(b) because Allstate has failed to "identify at least two predicate acts of mail fraud." (ECF No. 56, PageID.2012.) Again, the Court refers to the reasoning in similar allegedly fraudulent No-Fault billing cases, specifically:

> In complex civil RICO actions involving multiple defendants, Rule 9(b) does not [] require that the temporal or geographic particulars of each mailing made in furtherance of the fraudulent scheme be stated with particularity, but only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme.

*Total Toxicology Labs, LLC*, 2017 WL 3616476 at *5 (quoting *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-11500, 2013 WL 509284, at *5 (E.D.

15

Mich. Feb. 12, 2013)). As noted above, Allstate has provided detailed examples of every defendant's involvement in the allegedly fraudulent scheme throughout the First Amended Complaint, all of which meet the heightened pleading standard of Rule 9(b), and paint a clear picture of the overall scheme. Thus, the Court finds that Allstate has sufficiently plead its claims relating to mail fraud.

### ii. Voluntary Payment Doctrine

Defendants next argue that Allstate's recovery of payments is precluded by the voluntary payment doctrine, claiming that Allstate cannot recover the payments at issue as it made them "voluntarily with full knowledge of the underlying facts." (ECF No. 56, PageID.2012-13.) However, as the defendants correctly note in their response, "fraud can negate the voluntary payment doctrine," and Allstate has alleged sufficient facts to overcome a motion to dismiss on this issue. (*Id*.)

While it is true that a voluntary payment cannot be recovered after the fact, *see Pingree v. Mut. Gas Co.*, 65 N.W. 6, 7 (Mich. 1895), "a payment is only voluntary when made with full knowledge of the circumstances and without 'artifice, *fraud*, or deception.'" *Allstate Ins. Co. v. Performance Orthopedics of Michigan PLLC*, No. 20-CV-12008, 2023 WL 6205425, at *10 (E.D. Mich. Sept. 21, 2023) (quoting *Pingree*, 65 N.W. at 7) (emphasis added). Simply put, a "payment is not voluntary if it is induced by fraud." *Id*.

16

Defendants attempt to circumvent the conclusion that the payments were not voluntary, and therefore not barred by the voluntary payment doctrine, by citing Allstate's duty to "conduct thorough investigations of each No-Fault claim prior to payment." (ECF No. 56, PageID.2013.) But this exact argument has been rejected in a nearly identical case involving Allstate. *See Performance Orthopedics of Michigan PLLC*, 2023 WL 6205425 at *10 (holding that the voluntary payment doctrine does not preclude Allstate's RICO claims despite the insurer being "obliged to investigate the reasonableness and necessity of the claim before paying."). Defendants have provided no justification for departing from this conclusion. Accordingly, the Court finds that the voluntary payment doctrine does not subject Allstate to dismissal for failure to state a claim in the instant case, and therefore is not grounds for finding the First Amended Complaint futile.

### C. Undue Delay and Bad Faith

CHHC argues that Allstate has not uncovered any new information during discovery that would justify its proposed amendment as Allstate was aware of the existence of both CHHC and CHHCS, as well as the distinction between the two, prior to the current litigation. (ECF No. 56, PageID.2006.) Because of this, CHHC claims that "Allstate's attempt to amend at this stage demonstrates either undue delay or bad faith," and is likely "a pretext for later seeking extensions and more expansive discovery." (*Id.* at PageID.2014.)

17

However, there is no indication that Allstate delayed in filing the motion or that the amendment will cause a delay in the proceedings. In Allstate's brief in support of its motion to amend it explicitly says that it "does not seek to change any of the deadlines currently set by the operative case management/scheduling order." (ECF No. 49, PageID.1766.) As discussed below, Allstate's amendment is reasonable based on new information uncovered in discovery and filed the motion with significant time remaining in the discovery period.

The Court also notes that Allstate's motion is compliant with the agreed upon timeline set forth in the parties' Discovery Plan, where both CHHC and Spine Defendants took the position that "all motions to amend the pleadings should be filed no later than ninety (90) days before the close of fact discovery." (ECF No. 29, PageID.642.) Though the scheduling order controls the relevant deadline for filing, the Discovery Plan is indicative of the parties' shared belief, and the general understanding, that filing a motion to amend with several months remaining in discovery is typically sufficient to prevent undue prejudice. *See Allstate Ins. Co. v. Lint Chiropractic PC*, No. 23-CV-10904, 2024 WL 4806482, at *3 (E.D. Mich. Nov. 15, 2024) (finding that, at the time the motion to amend was filed, the "case is only a few months into discovery, so there is no prejudice to the Defendants").

In support of its allegation of bad faith, CHHC asserts that "Allstate's Motion portrays the discovery of CHHCS as newly uncovered information, [when]

18

in reality, Allstate has long been aware of both entities and the clear distinctions between them." (ECF No. 56, PageID.2006.) Allstate argues that this statement mischaracterizes its position. (ECF No 61, PageID.2088 n.2.) Allstate does not allege that it learned of CHHCS' existence through discovery, rather, it asserts that evidence presented in discovery, including tax records and other documents, "helped it uncover the manner in which CHHC and Walvekar utilized CHHCS to bill for services that (if rendered at all) were actually provided by CHHC." (*Id.*)

The instant motion is nearly identical to the motion to amend filed by Allstate in *Lint Chiropractic*, 2024 WL 4806482. In *Lint Chiropractic*, Allstate also sought to file an amended complaint to include three additional defendants with approximately five months remaining in discovery. *Id* at *2. Allstate provided the hearing transcript for that motion, in which the court both accepted Allstate's "judicious" approach toward naming parties in the original complaint and acknowledged that parties can change because of information uncovered through discovery. (ECF No. 61-2, PageID.2166.) Given the similarities between these cases, the Court adopts the reasoning from *Lint Chiropractic*, 2024 WL 4806482 at *3, and finds that Allstate's present motion does not demonstrate that Allstate acted in bad faith or unduly delayed its motion to amend the complaint.

## IV. CONCLUSION

Consequently, for the foregoing reasons **IT IS ORDERED** that Allstate's motion for leave to file amended complaint (ECF No. 49) is **GRANTED**.

**IT IS FURTHER ORDERED** that Allstate **SHALL FILE** its First Amended Complaint within one day of this opinion and order.

                                          s/ Linda V. Parker
                                          LINDA V. PARKER
                                          U.S. DISTRICT JUDGE

Dated: August 4, 2025